

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
08/03/2020

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| COVIA HOLDINGS CORPORATION, *et al.*,[1] | ) Case No. 20-33295 (DRJ) |
| | ) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) **Re: Docket No. 125** |

**ORDER AUTHORIZING THE RETENTION
AND EMPLOYMENT OF KIRKLAND & ELLIS LLP AND
KIRKLAND & ELLIS INTERNATIONAL  LLP AS ATTORNEYS FOR
THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF JUNE 29, 2020**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors") for the entry of an order (the "Order") authorizing the

Debtors to retain and employ Kirkland & Ellis LLP and Kirkland & Ellis International LLP

(collectively, "Kirkland") as their attorneys effective as of the Petition Date, pursuant to sections

327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and

2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1

and 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy

Local Rules"); and the Court having reviewed the Application, the Declaration of Jonathan S.

Henes, the president of Jonathan S. Henes, P.C., a partner of Kirkland & Ellis LLP, and a partner

of Kirkland & Ellis International LLP (the "Henes Declaration"), and the declaration of Chadwick

---

[1]  Due to the large number of Debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the Debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://cases.primeclerk.com/Covia.  The location of Debtor Covia Holdings Corporation's principal place of business and the Debtors' service address is:  3 Summit Park Drive, Suite 700, Independence, Ohio 44131.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

P. Reynolds, Executive Vice President, Chief Legal Officer, and Secretary of Covia Holdings Corporation (the "Reynolds Declaration"); and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and the Court having found that the Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found based on the representations made in the Application and in the Henes Declaration that (a) Kirkland does not hold or represent an interest adverse to the Debtors' estates and (b) Kirkland is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code; and the Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided adequate and appropriate notice of the Application under the circumstances and that no other or further notice is required; and the Court having reviewed the Application and having heard statements in support of the Application at a hearing held before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.       The Application is granted to the extent set forth herein.

2.       The Debtors are authorized to retain and employ Kirkland as their attorneys effective as of the Petition Date in accordance with the terms and conditions set forth in the Application and in the Engagement Letter attached hereto as **Exhibit 1**, as modified herein.

3.     Kirkland is authorized to provide the Debtors with the professional services as described in the Application and the Engagement Letter. Specifically, but without limitation, Kirkland will render the following legal services:

a.     advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

b.     advising and consulting on their conduct during these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

c.     attending meetings and negotiating with representatives of creditors and other parties in interest;

d.     taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

e.     preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

f.     representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

g.     advising the Debtors in connection with any potential sale of assets;

h.     appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

i.     advising the Debtors regarding tax matters;

j.     taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k.     performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors; and (iii) advising the Debtors on corporate and litigation matters.

4.      Kirkland shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Bankruptcy Local Rules, and any other applicable procedures and orders of the Court.  Kirkland also intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* Effective as of November 1, 2013, both in connection with the Application and the interim and final fee applications to be filed by Kirkland in these chapter 11 cases.

5.      Kirkland is authorized without further order of the Court to apply amounts from the prepetition advance payment retainer to compensate and reimburse Kirkland for fees or expenses incurred on or prior to the Petition Date consistent with its ordinary course billing practice.  At the conclusion of Kirkland's engagement by the Debtors, if the amount of any advance payment retainer held by Kirkland is in excess of the amount of Kirkland's outstanding and estimated fees, expenses, and costs, Kirkland will pay to the Debtors the amount by which any advance payment retainer exceeds such fees, expenses, and costs, in each case in accordance with the Engagement Letter.

6.      Notwithstanding anything to the contrary in the Application, the Engagement Letter, or the Declarations attached to the Application, the reimbursement provisions allowing the reimbursement of fees and expenses incurred in connection with participating in, preparing for, or responding to any action, claim, suit, or proceeding brought by or against any party that relates to the legal services provided under the Engagement Letter and fees for defending any objection to

4

Kirkland's fee applications under the Bankruptcy Code are not approved pending further order of the Court.

7.     Notwithstanding anything to the contrary in the Application, the Engagement Letter, or the Declarations attached in the Applications, the "Client Waiver" of the right to object to fees and expenses once paid is not effective while the Client is a debtor-in-possession.  The Client Waiver shall not be construed to limit, restrict, or impair, while Client is a debtor-in-possession, Client's responsibility to protect and conserve estate assets by reviewing and objecting to the allowance of professional fees in accordance with 11 U.S.C. §§ 330, 331, and 1106(a)(1) (incorporating sections 704(a)(5) and 704(a)(2)).

8.     Kirkland shall not charge a markup to the Debtors with respect to fees billed by contract attorneys who are hired by Kirkland to provide services to the Debtors and shall ensure that any such contract attorneys are subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.

9.     Kirkland shall provide ten-business-days' notice to the Debtors, the U.S. Trustee, and any official committee before any increases in the rates set forth in the Application or the Engagement Letter are implemented and shall file such notice with the Court.  The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

10.     The Debtors and Kirkland are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

11.     Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Bankruptcy Local Rules are satisfied by the contents of the Application.

12.     To the extent the Application, the Henes Declaration, the Reynolds Declaration, or the Engagement Letter is inconsistent with this Order, the terms of this Order shall govern.

13.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

14.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**Signed:  August 03, 2020.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

## <u>EXHIBIT 1</u>

**Engagement Letter**

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

601 Lexington Avenue
New York, NY 10022
United States

Jonathan S. Henes, P.C.
To Call Writer Directly:
+1 212 446 4927
jonathan.henes@kirkland.com

+1 212 446 4800

Facsimile:
+1 212 446 4900

www.kirkland.com

March 25, 2020

Chad Reynolds
3 Summit Park Drive
Suite 700
Independence, OH 44131

Re:     Retention to Provide Legal Services

Dear Mr. Reynolds,

We are very pleased that you have asked us to represent Covia Holdings Corporation and only those wholly or partially owned subsidiaries listed in an addendum or supplement to this letter (collectively, "Client") in connection with a potential restructuring.  Please note, the Firm's representation is only of Client; the Firm does not and will not represent any direct or indirect shareholder, director, officer, partner, employee, affiliate, or joint venturer of Client or of any other entity.

**General Terms.**  This retention letter (this "Agreement") sets forth the terms of Client's retention of Kirkland & Ellis LLP (and its affiliated entity Kirkland & Ellis International LLP (collectively, the "Firm")) to provide legal services and constitutes an agreement between the Firm and Client (the "Parties").  This Agreement sets forth the Parties' entire agreement for rendering professional services for the current matter, as well as for all other existing or future matters (collectively, the "Engagement"), except where the Parties otherwise agree in writing.

**Fees.**  The Firm will bill Client for fees incurred at its regular hourly rates and in increments of one-tenth of an hour (or in smaller time increments as otherwise required by a court).  The Firm reserves the right to adjust the Firm's billing rates from time to time in the ordinary course of the Firm's representation of Client.

Although the Firm will attempt to estimate fees to assist Client in Client's planning if requested, such estimates are subject to change and are not binding unless otherwise expressly and unequivocally stated in writing.

**Expenses.**  Expenses related to providing services shall be included in the Firm's statements as disbursements advanced by the Firm on Client's behalf.  Such expenses include

Beijing   Boston   Chicago   Dallas   Hong Kong   Houston   London   Los Angeles   Munich   Palo Alto   Paris   San Francisco   Shanghai   Washington, D.C.

# KIRKLAND & ELLIS LLP

Chad Reynolds
March 25, 2020
Page 2

**CONFIDENTIAL**

photocopying, printing, witness fees, travel expenses, filing and recording fees, certain secretarial overtime, and other overtime expenses, postage, express mail, and messenger charges, deposition costs, and other computer services, and miscellaneous other charges. Client shall pay directly (and is solely responsible for) certain larger costs, such as consultant or expert witness fees and expenses, and outside suppliers' or contractors' charges, unless otherwise agreed by the Parties. By executing this Agreement below, Client agrees to pay for all charges in accordance with the Firm's schedule of charges, a copy of which is attached hereto at Schedule 1, as revised from time to time.

      **Billing Procedures.**  The Firm's statements of fees and expenses are typically delivered monthly, but the Firm reserves the right to alter the timing of delivering its statements depending on circumstances. Client may have the statement in any reasonable format it chooses, but the Firm will select an initial format for the statement unless Client otherwise requests in writing. Depending on the circumstances, however, estimated or summary statements may be provided, with time and expense details to follow thereafter.

      **Retainer.**  Client agrees to provide to the Firm an "advance payment retainer," as defined in Rule 1.15(c) of the Illinois Rules of Professional Conduct, *Dowling v. Chicago Options Assoc., Inc.*, 875 N.E.2d 1012, 1018 (Ill. 2007), and *In re Caesars Entm't Operating Co., Inc.*, No. 15-01145 (ABG) (Bankr. N.D. Ill. May 28, 2015) (and cases cited therein), in the amount of $2,000,000. In addition, Client agrees to provide one or more additional advance payment retainers upon request by the Firm so that the amount of any advance payment retainers remains at or above the Firm's estimated fees and expenses. The Firm may apply the advance payment retainers to any outstanding fees as services are rendered and to expenses as they are incurred. Client understands and acknowledges that any advance payment retainers are earned by the Firm upon receipt, any advance payment retainers become the property of the Firm upon receipt, Client no longer has a property interest in any advance payment retainers upon the Firm's receipt, any advance payment retainers will be placed in the Firm's general account and will not be held in a client trust account, and Client will not earn any interest on any advance payment retainers; provided, however, that solely to the extent required under applicable law, at the conclusion of the Engagement, if the amount of any advance payment retainers held by the Firm is in excess of the amount of the Firm's outstanding and estimated fees, expenses, and costs, the Firm will pay to Client the amount by which any advance payment retainers exceed such fees, expenses, and costs. Client further understands and acknowledges that the use of advance payment retainers is an integral condition of the Engagement, and is necessary to ensure that:  Client continues to have access to the Firm's services; the Firm is compensated for its representation of Client; the Firm is not a pre-petition creditor in the event of a Restructuring Case; and that in light of the foregoing, the provision of the advance payment retainers is in Client's best interests. The fact that Client has provided the Firm with an advance payment retainer does not affect Client's right to terminate the client-lawyer relationship.

## KIRKLAND & ELLIS LLP

Chad Reynolds                                                   **CONFIDENTIAL**
March 25, 2020
Page 3

Please be advised that there is another type of retainer known as a "security retainer," as defined in *Dowling v. Chicago Options Assoc.*, 875 N.E.2d at 1018, and *In re Caesars Entm't Operating Co., Inc.*, No. 15-01145 (ABG) (Bankr. N.D. Ill. May 28, 2015) (and cases cited therein). A security retainer remains the property of the client until the lawyer applies it to charges for services that are actually rendered and expenses that are incurred. Any unearned funds are then returned to the client. In other circumstances not present here, the Firm would consider a security retainer and Client's funds would be held in the Firm's segregated client trust account until applied to pay fees and expenses. Funds in a security retainer, however, can be subject to claims of Client's creditors and, if taken by creditors, may leave Client unable to pay for ongoing legal services, which may result in the Firm being unable to continue the Engagement. Moreover, a security retainer creates clawback risks for the Firm in the event of an insolvency proceeding. The choice of the type of retainer to be used is Client's choice alone, but for the Engagement and for the reasons set forth above, the Firm is unwilling to represent Client in the Engagement without using the advance payment retainer.

**Termination.** The Engagement may be terminated by either Party at any time by written notice by or to Client. The Engagement will end at the earliest of (a) Client's termination of the Engagement, (b) the Firm's withdrawal, and (c) the substantial completion of the Firm's substantive work. If permission for withdrawal is required by a court, the Firm shall apply promptly for such permission, and termination shall coincide with the court order for withdrawal. If this Agreement or the Firm's services are terminated for any reason, such termination shall be effective only to terminate the Firm's services prospectively and all the other terms of this Agreement shall survive any such termination.

Upon cessation of the Firm's active involvement in a particular matter (even if the Firm continues active involvement in other matters on Client's behalf), the Firm will have no further duty to inform Client of future developments or changes in law as may be relevant to such matter. Further, unless the Parties mutually agree in writing to the contrary, the Firm will have no obligation to monitor renewal or notice dates or similar deadlines that may arise from the matters for which the Firm had been retained.

**Cell Phone and E-Mail Communication.** The Firm hereby informs Client and Client hereby acknowledges that the Firm's attorneys sometimes communicate with their clients and their clients' professionals and agents by cell telephone, that such communications are capable of being intercepted by others and therefore may be deemed no longer protected by the attorney-client privilege, and that Client must inform the Firm if Client does not wish the Firm to discuss privileged matters on cell telephones with Client or Client's professionals or agents.

The Firm hereby informs Client and Client hereby acknowledges that the Firm's attorneys sometimes communicate with their clients and their clients' professionals and agents by

## KIRKLAND & ELLIS LLP

Chad Reynolds                                                                          **CONFIDENTIAL**
March 25, 2020
Page 4

unencrypted e-mail, that such communications are capable of being intercepted by others and
therefore may be deemed no longer protected by the attorney-client privilege, and that Client must
inform the Firm if Client wishes to institute a system to encode all e-mail between the Firm and
Client or Client's professionals or agents.

**File Retention.**  All records and files will be retained and disposed of in compliance with
the Firm's policy in effect from time to time.  Subject to future changes, it is the Firm's current
policy generally not to retain records relating to a matter for more than five years.  Upon Client's
prior written request, the Firm will return client records that are Client's property to Client prior
to their destruction.  It is not administratively feasible for the Firm to advise Client of the closing
of a matter or the disposal of records.  The Firm recommends, therefore, that Client maintain
Client's own files for reference or submit a written request for Client's client files promptly upon
conclusion of a matter.  Notwithstanding anything to the contrary herein, Client acknowledges and
agrees that any applicable privilege of Client (including any attorney-client and work product
privilege or any duty of confidentiality) (collectively, the "Privileges") belongs to Client alone and
not to any successor entity (including without limitation the Client after a change in control or
other similar restructuring or non-restructuring transaction (including without limitation a
reorganized Client after the effective date of a plan of reorganization), whether through merger,
asset or equity sale, business combination, or otherwise, irrespective of whether such transaction
occurs in a Restructuring Case or on an out-of-court basis (in each case, a "Transaction")).  Client
hereby waives any right, title, and interest of such successor entity to all information, data,
documents, or communications in any format covered by the Privileges that is in the possession of
the Firm ("Firm Materials"), to the extent that such successor entity had any right, title, and interest
to such Firm Materials.  For the avoidance of doubt, Client agrees and acknowledges that after a
Transaction, such successor entity shall have no right to claim or waive the Privileges or request
the return of any such Firm Materials; instead, such Firm Materials shall remain in the Firm's sole
possession and control for its exclusive use, and the Firm will (a) not waive any Privileges or
disclose the Firm Materials, (b) take all reasonable steps to ensure that the Privileges survive and
remain in full force and effect, and (c) assert the Privileges to prevent disclosure of any Firm
Materials.

**Data Protection.**  You further agree that, if you provide us with personal data, you have
complied with applicable data protection legislation and that we may process such personal data
in accordance with our Data Transfer and Privacy Policy at www.kirkland.com.  We process your
personal data in order to (i) carry out work for you; (ii) share the data with third parties such as
expert witnesses and other professional advisers if our work requires; (iii) comply with applicable
laws and regulations and (iv) provide you with information relating to our Firm and its services.

## KIRKLAND & ELLIS LLP

Chad Reynolds                                                           **CONFIDENTIAL**
March 25, 2020
Page 5

    **Conflicts of Interest.**  As is customary for a law firm of the Firm's size, there are numerous business entities, with which Client currently has relationships, that the Firm has represented or currently represents in matters unrelated to Client.

    Further, in undertaking the representation of Client, the Firm wants to be fair not only to Client's interests but also to those of the Firm's other clients.  Because Client is engaged in activities (and may in the future engage in additional activities) in which its interests may diverge from those of the Firm's other clients, the possibility exists that one of the Firm's current or future clients may take positions adverse to Client (including litigation or other dispute resolution mechanisms) in a matter in which such other client may have retained the Firm or one of Client's adversaries may retain the Firm in a matter adverse to another entity or person.

    In the event a present conflict of interest exists between Client and the Firm's other clients or in the event one arises in the future, Client agrees to waive any such conflict of interest or other objection that would preclude the Firm's representation of another client (a) in other current or future matters substantially unrelated to the Engagement or (b) other than during a Restructuring Case (as defined below), in other matters related to Client (such representation an "Allowed Adverse Representation"). By way of example, such Allowed Adverse Representations might take the form of, among other contexts: litigation (including arbitration, mediation and other forms of dispute resolution); transactional work (including consensual and non-consensual merger, acquisition, and takeover situations, financings, and commercial agreements); counseling (including advising direct adversaries and competitors); and restructuring (including bankruptcy, insolvency, financial distress, recapitalization, equity and debt workouts, and other transactions or adversarial adjudicative proceedings related to any of the foregoing and similar matters).

    Notwithstanding the above, except for restructuring matters (as defined below), K&E LLP agrees, during the time when it is representing you, not to represent another person or entity in any litigation, arbitration or similar proceeding in which you are a party and such other person or entity is adverse to you without first obtaining a waiver from you. As used herein, "restructuring matters" means matters: (a) arising in, arising under, or relating to Title 11 of the United States Code 11 U.S.C. §§ 101 et seq. (or analogous state or foreign statute); (b) concerning a financing, refinancing, recapitalization, restructuring, or out-of-court workout of equity or debt or any merger, sale, acquisition, or other transaction in connection with any of the foregoing; (c) involving companies potentially in financial distress; and (d) involving litigation related to any of the foregoing.

    Client also agrees that it will not, for itself or any other entity or person, assert that either (i) the Firm's representation of Client or any of Client's affiliates in any past, present, or future matter or (ii) the Firm's actual or possible possession of confidential information belonging to Client or any of Client's affiliates is a basis to disqualify the Firm from representing another entity

# KIRKLAND & ELLIS LLP

Chad Reynolds                                                                    **CONFIDENTIAL**
March 25, 2020
Page 6

or person in any Allowed Adverse Representation.  Client further agrees that any Allowed Adverse Representation does not breach any duty that the Firm owes to Client or any of Client's affiliates. Client also agrees that the Firm's representation in the Engagement is solely of Client and that no member or other entity or person related to it (such as a shareholder, parent, subsidiary, affiliate, director, officer, partner, employee, or joint venturer) has the status of a client for conflict of interest purposes.

In addition, if a waiver of a conflict of interest necessary to allow the Firm to represent another client in a matter that is not substantially related to the Engagement is not effective for any reason, Client agrees that the Firm may withdraw from the Engagement.  Should that occur, Client will not, for itself or any other entity or person, seek to preclude such termination of services or assert that either (a) the Firm's representation of Client or any of Client's affiliates in any past, present, or future matter or (b) the Firm's actual or possible possession of confidential information belonging to Client or any of Client's affiliates is a basis to disqualify the Firm from representing such other client or acting on such adverse matter.

It is important that you review this letter carefully and consider all of the advantages and disadvantages of waiving certain conflicts of interests that would otherwise bar the Firm from representing parties with interests adverse to you during the time in which the Firm is representing you.  You also understand that because this waiver includes future issues and future clients that are unknown and unknowable at this time, it is impossible to provide you with any more details about those prospective clients and matters.  Thus, in choosing to execute this waiver, you have recognized the inherent uncertainty about the array of potential matters and clients the Firm might take on in matters that are adverse to you but have nonetheless decided it is in your interest to waive conflicts of interest regarding the Allowed Adverse Representations and waive rights to prohibit the Firm's potential withdrawal should a conflict waiver prove ineffectual.

The Firm informs Client that certain entities owned by current or former Firm attorneys and senior staff ("attorney investment entities") have investments in funds or companies that may, directly or indirectly, be affiliated with Client, hold investments in Client's debt or equity securities, may be adverse to Client, or conduct commercial transactions with Client (each, a "Passive Holding").  The attorney investment entities are passive and have no management or other control rights in such funds or companies.  The Firm notes that other persons may in the future assert that a Passive Holding creates, in certain circumstances, a conflict between the Firm's exercise of its independent professional judgment in rendering advice to Client and the financial interest of Firm attorneys participating in the attorney investment entities, and such other persons might seek to limit Client's ability to use the Firm to advise Client on a particular matter.  While the Firm cannot control what a person might assert or seek, the Firm believes that the Firm's judgment will not be compromised by virtue of any Passive Holding.  Please let us know if Client

# KIRKLAND & ELLIS LLP

Chad Reynolds                                                                    **CONFIDENTIAL**
March 25, 2020
Page 7

has any questions or concerns regarding the Passive Holdings.  By executing this letter, Client acknowledges the Firm's disclosure of the foregoing.

**Restructuring Cases**.  If it becomes necessary for Client to commence a restructuring case under chapter 11 of the U.S. Bankruptcy Code (a "Restructuring Case"), the Firm's ongoing employment by Client will be subject to the approval of the court with jurisdiction over the petition.  If necessary, the Firm will take steps necessary to prepare the disclosure materials required in connection with the Firm's retention as lead restructuring counsel.  In the near term, the Firm will begin conflicts checks on potentially interested parties as provided by Client.

If necessary, the Firm will prepare a preliminary draft of a schedule describing the Firm's relationships with certain interested parties (the "Disclosure Schedule").  The Firm will give Client a draft of the Disclosure Schedule once it is available.  Although the Firm believes that these relationships do not constitute actual conflicts of interest, these relationships must be described and disclosed in Client's application to the court to retain the Firm.

If in the Firm's determination a conflict of interest arises in Client's Restructuring Case requiring separate conflicts counsel, then Client will be required to use separate conflicts counsel in those matters.

**No Guarantee of Success.**  It is impossible to provide any promise or guarantee about the outcome of Client's matters.  Nothing in this Agreement or any statement by Firm staff or attorneys constitutes a promise or guarantee.  Any comments about the outcome of Client's matter are simply expressions of judgment and are not binding on the Firm.

**Consent to Use of Information.**  In connection with future materials that, for marketing purposes, describe facets of the Firm's law practice and recite examples of matters the Firm handles on behalf of clients, Client agrees that, if those materials avoid disclosing Client's confidences and secrets as defined by applicable ethical rules, they may, with the Client's prior written consent, identify Client as a client, may contain factual synopses of Client's matters, and may indicate generally the results achieved.

**Reimbursement of Fees and Expenses.**  Client agrees to promptly reimburse the Firm for all internal or external fees and expenses, including the amount of the Firm's attorney and paralegal time at normal billing rates, as incurred by the Firm in connection with participating in, preparing for, or responding to any action, claim, objection, suit, or proceeding brought by or against any third-party that relates to the legal services provided by the Firm under this Agreement.  Without limiting the scope of the foregoing, and by way of example only, this paragraph extends to all such fees and expenses incurred by the Firm: in responding to document subpoenas, and preparing for and testifying at depositions and trials; and with respect to the filing, preparation, prosecution or defense of any applications by the Firm for approval of fees and expenses in a judicial, arbitral, or

# KIRKLAND & ELLIS LLP

Chad Reynolds                                                                                    **CONFIDENTIAL**
March 25, 2020
Page 8

similar proceeding.  Further, Client understands, acknowledges, and agrees that in connection with a Restructuring Case, if Client has not objected to the payment of a Firm invoice or to a Firm fee and expense application, has in fact paid such invoice, or has approved such fee and expense application, then Client waives its right (and the right of any successor entity as a result of a Transaction or otherwise) to subsequently object to the payment of fees and expenses covered by such invoice or fee application.

**LLP.**  Kirkland & Ellis LLP is a limited liability partnership organized under the laws of Illinois, and Kirkland & Ellis International LLP is a limited liability partnership organized under the laws of Delaware.  Pursuant to those statutory provisions, an obligation incurred by a limited liability partnership, whether arising in tort, contract or otherwise, is solely the obligation of the limited liability partnership, and partners are not personally liable, directly or indirectly, by way of indemnification, contribution, assessment or otherwise, for such obligation solely by reason of being or so acting as a partner.

**Governing Law**.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Illinois, without giving effect to the conflicts of law principles thereof.

**Miscellaneous.**  This Agreement sets forth the Parties' entire agreement for rendering professional services.  It can be amended or modified only in writing and not orally or by course of conduct.  Each Party signing below is jointly and severally responsible for all obligations due to the Firm and represents that each has full authority to execute this Agreement so that it is binding.  This Agreement may be signed in one or more counterparts and binds each Party countersigning below, whether or not any other proposed signatory ever executes it.  If any provision of this Agreement or the application thereof is held invalid or unenforceable, the invalidity or unenforceability shall not affect other provisions or applications of this Agreement which can be given effect without such provisions or application, and to this end the provisions of this Agreement are declared to be severable.  Any agreement or waiver contained herein by Client extends to any assignee or successor in interest to Client, including without limitation the reorganized Client upon and after the effective date of a plan of reorganization in a Restructuring Case.

This Agreement is the product of arm's-length negotiations between sophisticated parties, and Client acknowledges that it is experienced with respect to the retention of legal counsel.  Therefore, the Parties acknowledge and agree that any otherwise applicable rule of contract construction or interpretation which provides that ambiguities shall be construed against the drafter (and all similar rules of contract construction or interpretation) shall not apply to this Agreement.  The Parties further acknowledge that the Firm is not advising Client with respect to this Agreement because the Firm would have a conflict of interest in doing so, and that Client has consulted (or had the opportunity to consult) with legal counsel of its own choosing.   Client further

# KIRKLAND & ELLIS LLP

Chad Reynolds                                                   **CONFIDENTIAL**
March 25, 2020
Page 9

acknowledges that Client has entered into this Agreement and agreed to all of its terms and conditions voluntarily and fully-informed, based on adequate information and Client's own independent judgment.  The Parties further acknowledge that they intend for this Agreement to be effective and fully enforceable upon its execution and to be relied upon by the Parties.

* * *

# KIRKLAND & ELLIS LLP

Chad Reynolds                                                          **CONFIDENTIAL**
March 25, 2020
Page 10

Please confirm your agreement with the arrangements described in this letter by signing the enclosed copy of this letter in the space provided below and returning it to us.  Please understand that, if we do not receive a signed copy of this letter within twenty-one days, we will withdraw from representing you in this Engagement.

Very truly yours,

KIRKLAND & ELLIS LLP

By: _____
Printed Name:  Jonathan Henes, P.C.
Title:  Partner

Agreed and accepted this 25th day of March, 2020

COVIA HOLDINGS CORPORATION

By: _____
Name:  Chad Reynolds
Title: EVP, Chief Legal Officer & Secretary

# KIRKLAND & ELLIS LLP

Chad Reynolds                                                      **CONFIDENTIAL**
March 25, 2020
Page 11

## ADDENDUM: List of Client Subsidiaries

Covia Holdings Corporation
Covia Specialty Minerals Inc.
Covia Financing LLC
Covia Canada Ltd. Ontario
Covia Finance Company LLC
Grupo Materias Primas de Mexico S. de R.
L. de C. V.
Grupo Materias Primas S. de R. L. de C. V.
Materias Primas Monterrey S. de R. L. de C. V.
Materias Primas Minerales de Ahuazotepec,
S. de R. L. de C. V.
Servicios Integrales Lampazos S. de R. L. de
C. V.
909273 Ontario Inc.
Bison Merger Sub I, LLC
FMSA Inc.
Fairmount Santrol Inc.
Fairmount Minerals Sales de Mexico, S. de
R. L. de C. V.
Santrol de Mexico, S. de R. L. de C. V.
Shakopee Sand LLC
FML Resin, LLC
FML Sand, LLC
West Texas Housing LLC
FML Terminal Logistics, LLC
Fairmount Logistics LLC
Technisand, Inc.

Best Sand Corporation
Best Sand of Pennsylvania, Inc.
Cheyenne Sand Corp.
Construction Aggregates Corporation of
Michigan, Inc.
Standard Sand Corporation
Specialty Sands, Inc.
Lake Shore Sand Company (Ontario) Ltd.
Mineral Visions Inc.
Covia Europe ApS
Wisconsin Industrial Sand Company L.L.C.
Wisconsin Specialty Sands, Inc.
Alpha Resins, LLC
Technimat LLC
Santrol (Yixing) Proppant Co. Ltd
Wedron Silica Company
Wexford Sand Co.
Fairmount Minerals, LLC
Black Lab LLC
Self-Suspending Proppant LLC

Chad Reynolds
March 25, 2020
Page No. 1

<u>**SCHEDULE 1**</u>

**KIRKLAND & ELLIS LLP**

**CLIENT-REIMBURSABLE EXPENSES AND OTHER CHARGES**

*Effective 01/01/2020*

The following outlines Kirkland & Ellis LLP's ("K&E LLP") policies and standard charges for various services performed by K&E LLP and/or by other third parties on behalf of the client which are often ancillary to our legal services. Services provided by in-house K&E LLP personnel are for the convenience of our clients. Given that these services are often ancillary to our legal services, in certain instances it may be appropriate and/or more cost efficient for these services to be outsourced to a third-party vendor. If services are provided beyond those outlined below, pricing will be based on K&E LLP's approximate cost and/or comparable market pricing.

- **Duplicating, Reprographics and Printing**: The following list details K&E LLP's charges for duplicating, reprographics and printing services:

  - Black and White Copy or Print (all sizes of paper):
    - $0.16 per impression for all U.S. offices
    - €0.10 per impression in Munich
    - £0.15 per impression in London
    - HK$1.50 per impression in Hong Kong
    - RMB1.00 per impression in Beijing and Shanghai
  - Color Copy or Print (all sizes of paper):
    - $0.55 per impression
  - Scanned Images:
    - $0.00 per page for black and white or color scans
  - Other Services:
    - CD/DVD Duplicating or Mastering - $7/$10 per CD/DVD
    - Binding - $0.70 per binding
    - Large or specialized binders - $13/$27
    - Tabs - $0.13 per item
    - OCR/File Conversion - $0.03 per page
    - Large Format Printing - $1.00 per sq. ft.

- **Secretarial and Word Processing**: Clients are not charged for secretarial and word processing activities incurred on their matters during standard business hours.

- **Overtime Charges**: Clients will be charged for overtime costs for secretarial and document services work if either (i) the client has specifically requested the after-hours work or (ii) the nature of the work being done for the client necessitates out-of-hours overtime and such work could not have been done during normal working

1

Chad Reynolds
March 25, 2020
Page No. 2

hours.  If these conditions are satisfied, costs for related overtime meals and transportation also will be charged.

- **Travel Expenses**:  We charge clients our out-of-pocket costs for travel expenses including associated travel agency fees.  We charge coach fares (business class for international flights) unless the client has approved business-class, first-class or an upgrade.  K&E LLP personnel are instructed to incur only reasonable airfare, hotel and meal expenses.  K&E LLP negotiates, uses, and passes along volume discount hotel and air rates whenever practicable.  However, certain retrospective rebates may not be passed along.

- **Catering Charges:**  Clients will be charged for any in-house catering service provided in connection with client matters.

- **Communication Expenses**:  We do not charge clients for telephone calls or faxes made from K&E LLP's offices with the exception of third-party conference calls and videoconferences.

  Charges incurred for conference calls, videoconferences, cellular telephones, and calls made from other third-party locations will be charged to the client at the actual cost incurred.  Further, other telecommunication expenses incurred at third-party locations (e.g., phone lines at trial sites, Internet access, etc.) will be charged to the client at the actual cost incurred.

- **Overnight Delivery/Postage**:  We charge clients for the actual cost of overnight and special delivery (e.g., Express Mail, FedEx, and DHL), and U.S. postage for materials mailed on the client's behalf.  K&E LLP negotiates, uses, and passes along volume discount rates whenever practicable.

- **Messengers**:  We charge clients for the actual cost of a third party vendor messenger.

- **Library Research Services:**  Library Research staff provides research and document retrieval services at the request of attorneys, and clients are charged per hour for these services.  Any expenses incurred in connection with the request, such as outside retrieval service or online research charges, are passed on to the client at cost, including any applicable discounts.

- **Online Research Charges**:  K&E LLP will not charge for costs incurred in using third-party online research services in connection with a client matter.

- **Inter-Library Loan Services:**  Our standard client charge for inter-library loan services when a K&E LLP library employee borrows a book from an outside source is $25 per title.  There is no client charge for borrowing books from K&E LLP

2

Chad Reynolds
March 25, 2020
Page No. 3

libraries in other cities or from outside collections when the title is part of the K&E
LLP collection but unavailable.

- **Off-Site Legal Files Storage**:  Clients are not charged for off-site storage of files
  unless the storage charge is approved in advance.

- **Electronic Data Storage**:  K&E LLP will not charge clients for costs to store
  electronic data and files on K&E LLP's systems if the data stored does not exceed
  100 gigabytes (GB).  If the data stored for a specific client exceeds 100GB, K&E
  LLP will charge clients $4.00 per month/per GB for all network data stored until
  the data is either returned to the client or properly disposed of.  For e-discovery data
  on the Relativity platform, K&E LLP will also charge clients $4.00 per month/per
  GB until the data is either returned to the client or properly disposed of.

- **Calendar Court Services**:  Our standard charge is $25 for a court filing and other
  court services or transactions.

- **Supplies**:  There is no client charge for standard office supplies.  Clients are
  charged for special items (e.g., a minute book, exhibit tabs/indexes/dividers,
  binding, etc.) and then at K&E LLP's actual cost.

- **Contract Attorneys and Contract Non-Attorney Billers**:  If there is a need to
  utilize a contract attorney or contract non-attorney on a client engagement, clients
  will be charged a standard hourly rate for these billers unless other specific billing
  arrangements are agreed between K&E LLP and client.

- **Expert Witnesses, Experts of Other Types, and Other Third Party
  Consultants**:  If there is a need to utilize an expert witness, expert of other type, or
  other third party consultant such as accountants, investment bankers, academicians,
  other attorneys, etc. on a client engagement, clients will be requested to retain or
  pay these individuals directly unless specific billing arrangements are agreed
  between K&E LLP and client.

- **Third Party Expenditures**: Third party expenditures (e.g., corporate document
  and lien searches, lease of office space at Trial location, IT equipment rental, SEC
  and regulatory filings, etc.) incurred on behalf of a client, will be passed through to
  the client at actual cost.  If the invoice exceeds $50,000, it is K&E LLP's policy
  that wherever possible such charges will be directly billed to the client.  In those
  circumstances where this is not possible, K&E LLP will seek reimbursement from
  our client prior to paying the vendor.

Unless otherwise noted, charges billed in foreign currencies are determined annually based on
current U.S. charges at an appropriate exchange rate.